STATE OF MINNESOTA

IN SUPREME COURT

A13-2141

Workers' Compensation Court of Appeals

Donald D. David,

      Respondent,

vs.

Bartel Enterprises (Nitro Green),

      Relator,

and

SFM Mutual Insurance Company,

      Relator.

Anderson, J.
Dissenting, Stras, J.

Filed: November 26, 2014
Office of Appellate Courts

_____

Scott H. Soderberg, David R. Vail, Soderberg Law Firm LLC, Minneapolis, Minnesota, for respondent.

Andrew W. Lynn, Lynn, Scharfenberg & Hollick, Minneapolis, Minnesota, for relators.

_____

S Y L L A B U S

As a matter of comity, we recognize the Legislature's formulation of attorney fees for workers' compensation cases under Minn. Stat. § 176.081, subd. 1(a) (2012), as presumptively reasonable, and will not, absent exceptional circumstances, review whether the fee calculated using the statutory formula is excessive.

Affirmed.

1

O P I N I O N

ANDERSON, Justice.

The issue presented by this case is whether Minn. Stat. § 176.081, subd. 1(a) (2012),[1] violates the separation of powers by requiring employers and insurers to pay attorney fees calculated by a statutory formula not subject to judicial review. Although we held in *Irwin v. Surdyk's Liquor*, 599 N.W.2d 132, 134 (Minn. 1999), that a statutory maximum on an attorney-fee award violated the separation of powers because there was no final judicial review of that award, we have not considered whether an attorney-fee award less than the statutory maximum must also be subject to judicial review. Relators Bartel Enterprises and SFM Mutual Insurance Company contend that in the absence of judicial review to ensure a fee award is not excessive, the statutory formula violates the separation of powers and is unconstitutional. We conclude that, as a matter of comity, we will recognize the Legislature's statutory formula as presumptively reasonable, and that absent exceptional circumstances, further judicial review of a presumptively reasonable, correctly calculated attorney-fee award is unnecessary. Because Bartel and SFM did not identify any exceptional circumstances that would overcome this strong presumption in

---

[1]     After the events in this case, the Legislature amended section 176.081 to simplify the statutory formula, raise the maximum fee, and limit when employers must reimburse employees for their attorney fees, among other things. *See* Act of May 16, 2013, ch. 70, art. 2, §§ 3-4, 2013 Minn. Laws 362, 369-71. Because the provisions of the workers' compensation law in effect on the date of injury control the rights and obligations of the parties, however, we apply the pre-amendment version of the statute. *See Sherman v. Whirlpool Corp.*, 386 N.W.2d 221, 225 (Minn. 1986).

favor of concluding the fee award is reasonable, and there is no dispute that the fee was calculated correctly using the statutory formula, we affirm.

Respondent Donald David injured his back while working for Bartel Enterprises. David incurred medical expenses for surgery, other treatment, and hospitalization. Bartel and its insurer, SFM Mutual Insurance Company, initially disputed liability under the Workers' Compensation Act, Minn. Stat. ch. 176 (2012), but, after negotiating with David's health-care providers, eventually agreed to pay $233,054.50 to settle all of David's medical bills.

For his work in representing David over the course of the dispute, David's attorney sought an award of contingent attorney fees in the amount of $36,810.90, pursuant to *Roraff v. State*, 288 N.W.2d 15 (Minn. 1980), and Minn. Stat. § 176.081. The claimed fee was calculated by applying the statutory formula in section 176.081 to the dollar value of David's medical benefits and disregarding the upper limit set by the statutory formula.[2] Bartel and SFM objected, arguing in part that the claimed fee exceeded the statutory limit. *See* Minn. Stat. § 176.081, subd. 1(b) ("[F]ees . . . may not exceed $13,000."). Bartel and SFM also asserted that a mechanical application of the statutory formula—without judicial review to determine whether the resulting fee award was excessive—unconstitutionally intrudes upon judicial authority over attorneys and attorney fees and therefore violates separation-of-powers principles.

---

[2]     David's counsel later recognized that he had made an arithmetic error and the correct amount of his fee request should have been $46,810.90 instead of $36,810.90.

3

The compensation judge concluded that $13,000, the fee calculated by applying the statutory formula, would adequately compensate David's attorney for his work and that a fee award above the statutory limit was unwarranted. Relying on decisions of the Workers' Compensation Court of Appeals (WCCA), the compensation judge refused to consider whether the statutory fee was reasonable in light of the factors identified in *Irwin* for an award exceeding the statutory limit. *See Irwin*, 599 N.W.2d at 142.

Bartel and SFM appealed to the WCCA, arguing that the fee award was unreasonable and again asserting a constitutional challenge based on *Irwin*, 599 N.W.2d 132. The WCCA acknowledged that it lacked the jurisdiction to address the constitutional challenge. *David v. Bartel Enters. (Nitro Green)*, No. WC13-5567, 2013 WL 5911429, at *4 (Minn. WCCA Oct. 23, 2013) (citing *Irwin*, 599 N.W.2d at 139-40); *see* Minn. Stat. § 175A.01, subd. 5 (2012). The WCCA then concluded, "*Irwin* did not invalidate application of the [statutory] formula to attorney fees amounting to the statutory maximum or less," and therefore affirmed the compensation judge's fee award decision. *David*, 2013 WL 5911429, at *4. Bartel and SFM sought review by writ of certiorari.

I.

The constitutional interpretation of a statute presents a question of law, which we review de novo. *E.g.*, *Gluba ex rel. Gluba v. Bitzan & Ohren Masonry*, 735 N.W.2d 713, 719 (Minn. 2007). We apply the plain meaning of unambiguous statutes, *e.g.*, *Larson v. State*, 790 N.W.2d 700, 703 (Minn. 2010); *see also* Minn. Stat. § 645.16 (2012), and

4

declare statutes unconstitutional "only when absolutely necessary," *Gluba*, 735 N.W.2d at 719; *see also* Minn. Stat. § 645.17 (2012).

To put the dispute in its proper context, we begin with an overview of the workers' compensation statutory attorney fee provisions that govern this case. Minnesota Statutes § 176.081 governs the fees that attorneys may receive in contested workers' compensation cases. It provides a formula to use in calculating "[a]ll fees" for attorneys representing employees. *Id.*, subd. 1(a). The formula generates a fee equal to 25 percent of the first $4,000 in compensation benefits recovered by the employee plus 20 percent of the next $60,000 in benefits recovered. *Id.* Typically, the fee award is withheld from the periodic payments the employee receives, *see* Minn. Stat. § 176.081, subd. 1(c) (providing for making the fee a lien against the amount payable to the employee), although, as here, the employer may be liable for the fee. *See id.*, subd. 1(a)(1) ("In cases where the contingent fee is inadequate the employer or insurer *is liable* for attorney fees based on the formula . . . ." (emphasis added)); *id.*, subd. 7 (requiring the employer or insurer to reimburse the employee for a portion of the fee).

We have recognized that the legislative policies underlying the statutory fee formula include "(1) protecting compensation claimants from excessive legal fees which might otherwise severely deplete funds badly needed by the employee and his or her dependents; and (2) insuring that attorneys who represent claimants will receive reasonable compensation, so that competent counsel will be available to injured employees." *Mack v. City of Minneapolis*, 333 N.W.2d 744, 749 (Minn. 1983) (citing *Kahn v. Univ. of Minn.*, 327 N.W.2d 21, 24 (Minn. 1982)); *see also Sarja v. Pittsburgh*

*Steel Co.*, 154 Minn. 217, 219, 191 N.W. 742 (1923) ("[F]or the purpose of securing to those intended to be protected or aided by the [Workers' Compensation] act the full benefits thereof, [a fee provision] was enacted."). But, section 176.081 uses mandatory language that does not contemplate adjustments to the fee amount generated by the statutory formula. *See* Minn. Stat. § 176.081, subd. 1(a) (providing that a fee calculated by applying the formula to an employee's monetary compensation "is the *maximum permissible* fee and *does not require approval* by the commissioner, compensation judge, or any other party" (emphasis added)).

In *Irwin v. Surdyk's Liquor*, we held that Minn. Stat. § 176.081 was unconstitutional as a violation of the "doctrine of separation of powers . . . to the extent it impinges on [the judiciary's] inherent power to oversee attorneys and attorney fees and deprives us of a final, independent review of attorney fees." 599 N.W.2d 132, 142 (Minn. 1999). We noted in particular that because "the judiciary retains final control over attorneys," *id.* at 140, legislation that regulates attorney fees must allow for judicial review, *see id.* at 141-42 ("Legislation that prohibits this court from deviating from the precise statutory amount of awardable attorney fees impinges on the judiciary's inherent power to oversee attorneys and attorney fees by depriving this court of a final, independent review of attorney fees."). Thus, while we did "not take issue with the actual percentage or dollar limitations adopted by" the Legislature, we required judicial review for the "legislative guidelines to be constitutionally permissible." *Id.* at 141. To the extent that Minn. Stat. § 176.081 "impinges on our inherent power to oversee

attorneys and attorney fees and deprives us of a final, independent review of attorney fees," we held the statute unconstitutional. *Irwin*, 599 N.W.2d at 142.

Bartel and SFM now argue that *Irwin*'s reasoning compels a similar conclusion here—that the statute is unconstitutional to the extent it precludes judicial review of whether fee awards under the formula are excessive. We agree that the central point of *Irwin*—the judiciary's final control over attorneys—applies regardless of whether a statutory formula establishes a ceiling or a floor for a fee award. *See id.* at 140. Though we acknowledged in *Irwin* that the "portions of section 176.081 that do not violate the doctrine of separation of powers remain valid," we ultimately concluded that a statute that precludes the judiciary from reviewing an award of attorney fees violates the separation of powers doctrine. *Id.* at 142.

## II.

While we reaffirm the holding in *Irwin* today, we conclude that it is unnecessary to decide the extent to which *Irwin* applies to a presumptively reasonable fee award, calculated according to statute, that is alleged to be excessive. As we have done on other occasions when the Legislature has encroached on a judicial function in violation of the separation of powers, we choose to recognize the legislative formula in Minn. Stat. § 176.081 as a matter of comity. *See, e.g.*, *State v. McCoy*, 682 N.W.2d 153, 160 (Minn. 2004) (choosing to "exercise our supervisory power over Minnesota courts by adopting a reasonable statute," even though that statute conflicted with an earlier court rule regarding the admission of evidence); *Cowern v. Nelson*, 207 Minn. 642, 647, 290 N.W. 795, 797 (1940) (accepting, by comity, a law authorizing non-lawyers to act as real estate

7

brokers, even though such actions could be construed as the unauthorized practice of law). We acknowledge that "[d]ue respect for the co-equal branches of government commands us to exercise great restraint before striking down a statute as unconstitutional." *McCoy*, 682 N.W.2d at 160 (citation omitted) (internal quotation marks omitted). Restraint is particularly appropriate in a workers' compensation matter, which is "solely a creature of statute" based on "policy decisions" that "are properly for the Legislature." *Meils by Meils v. Nw. Bell Tel. Co.*, 355 N.W.2d 710, 713 (Minn. 1984); *see also Maxwell Commc'ns v. Webb Publ'g Co.*, 518 N.W.2d 830, 834 (Minn. 1994) (Coyne, J., concurring specially) (noting that the workers' compensation system is "a creature of statute without counterpart in the common law").

We therefore return to the policies underlying section 176.081. In order to provide quick and efficient delivery of benefits to injured workers at a reasonable cost to employers, the Legislature created a system of workers' compensation that, while offering numerous benefits to all parties, also requires a mutual renunciation of rights and remedies that were available to employers and employees at common law. Minn. Stat. § 176.001; *see also Boryca v. Marvin Lumber & Cedar*, 487 N.W.2d 876, 879 n.3 (Minn. 1992) ("The whole scheme of workers' compensation is one of reciprocal concessions by the employer and employee."). The Legislature also sought to balance the interests of the injured employee and retained counsel by "protecting compensation claimants from excessive legal charges and at the same time . . . ensuring that their counsel receive reasonable fees for their services" through regulation of attorney fees. *In re Award of*

8

*Attorney's Fees* (*Rock v. Bloomington Sch. Dist. #271*), 269 N.W.2d 360, 363 (Minn. 1978).

The formula for calculating workers' compensation attorney fees designed by the Legislature in Minn. Stat. § 176.081 is based on the contingent-fee model, which has a long tradition in workers' compensation cases. Stewart Jay, *The Dilemmas of Attorney Contingent Fees*, 2 Geo. J. Legal Ethics 813, 815 (1989) ("Contingent fees became prevalent in an era of escalating industrial and transportation accidents, whose victims frequently could not afford lawyers to obtain redress for their injuries."); *see also Krueger v. State Dep't of Highways*, 295 Minn. 514, 516, 202 N.W.2d 873, 875 (1972) (upholding findings that employee and attorney entered into contingent-fee agreement and a fee in accordance with that agreement was reasonable). We have previously explained:

> Contracts for contingent fees are as much for the benefit of the client as for the attorney, because if the client has a meritorious cause of action, but no means with which to pay for legal services unless he can, with the sanction of the law, make a contract for a contingent fee to be paid out of the proceeds of the litigation, he cannot obtain the services of a law-abiding attorney . . . .

*Hollister v. Ulvi*, 199 Minn. 269, 276-77, 271 N.W. 493, 497 (1937) (quoting 2 R.C.L. § 121). Similarly, we have acknowledged that the Legislature's contingent-fee structure in section 176.081 is not unreasonable. *Mack*, 333 N.W.2d at 751 ("[T]he legislature could reasonably believe that 20-25% is a fair contingent fee for handling compensation matters of moderate size.").

While in a particular case the Legislature's formula may result in a higher fee than the attorney might receive if paid by the hour or under a different formula, *see Krueger*, 295 Minn. at 516-17, 202 N.W.2d at 876 (concluding that a 33 percent contingent fee was not unreasonable, even though "the time and effort devoted to the settlement of respondent's claim may not have been extensive or difficult"), this feature is always an element of the risk-spreading inherent in contingent fee formulas. *See* Lester Brickman, *Effective Hourly Rates of Contingency-Fee Lawyers: Competing Data and Non-Competitive Fees*, 81 Wash. U. L.Q. 653, 655-56 (2003) ("Contingency fees are designed to—and do—yield higher effective hourly rates than do hourly rate fees to reflect the risks that lawyers bear."); Katherine M. Mongoven, *Impact of Contingency Fee Agreements on "Reasonable" Attorney Fees Awarded Pursuant to Wisconsin Fee-Shifting Statutes*, 88 Marq. L. Rev. 1013, 1023-24 (2005) (arguing that because of the risk of no compensation in some cases, attorneys must be allowed to "recover fees in the amount of their contingent fee—no more or no less—despite that the fee may seem 'unreasonable' for the amount of work they performed in a particular case"). We are "reluctant to set the exact amount of attorneys fees . . . in any compensation case, . . . because in our view it is impossible to say that only one figure represents a proper award." *In re Award of Attorney's Fees*, 269 N.W.2d at 362. To promote its objective of ensuring the "quick and efficient delivery" of benefits to injured workers at a reasonable cost, Minn. Stat. § 176.001, the Legislature reasonably adopted a formula for calculating fee awards that mimics the risk-spreading features of contingent-fee retainer agreements.

To be sure, the contingent-fee award in some workers' compensation cases is paid by the employer, rather than under a contract between the employee and the employee's attorney. *See* Minn. Stat. § 176.081, subd. 1(a)(1). But this feature reflects a legislative policy choice that we have previously upheld. *Kahn*, 327 N.W.2d at 24 ("[T]he statute is designed to protect [employees] from excessive legal charges which might otherwise severely deplete funds badly needed by the employee . . . .").

Conducting a case-by-case determination of attorney fees, as urged by the relators, neglects this legislative policy, would disrupt the risk-spreading and incentive features of the current fee-formula structure, and would undermine other legislative objectives. *See, e.g., Kahn*, 327 N.W.2d at 24 (statutory authority for attorney fees furthers "the public policy of this state that injured employees have access to representation by competent counsel knowledgeable of the intricacies of the workers' compensation law"). It is also worth noting that the public policy choice made by the Legislature to permit contingent fees reflects the reality that there are any number of ways attorney fees could be calculated (including, but not limited to, contingent fees, flat fees, hourly fees, and various combinations of types of awards), and the implicit assumption by Bartel and SFM that an hourly based fee is superior is just that—an assumption. This assumption, at least for baseline attorney fee calculations in workers' compensation matters, is not one that is shared by the Legislature.

The dissent would have us intervene here, as we did in *Irwin*. We apply comity on an as-needed basis and it does not follow that merely because we deployed constitutional principles in *Irwin* we must necessarily apply them here. That said, there are differences

11

between the circumstances here and those in *Irwin.* We explained in *Irwin* that we "do not take issue with the actual percentage or dollar limitations adopted by the legislature in Minn. Stat. § 176.081." 599 N.W.2d at 141. Instead, we challenged the Legislature's "prohibit[ion on] any deviation from the statutory maximum." *Id.* Unlike the fee-formula structure at issue here, the statutory maximum is a stark departure from the contingent-fee framework that the Legislature adopted. Because this case does not invoke the statutory maximum, we need not employ *Irwin*'s reasoning.

III.

Thus, we elect to recognize as a matter of comity the legislative determination that a fee calculated according to the statutory formula is not excessive. We therefore will not review the reasonableness of a correctly calculated fee to determine whether it is excessive, absent exceptional circumstances. We have previously said that contingent fees are condemned "only where an attorney has taken advantage of a client's circumstances to exact an unreasonable or unconscionable proportion of the client's claim." *Holt v. Swenson*, 252 Minn. 510, 514, 90 N.W.2d 724, 727-28 (1958). On the other hand, we have recognized that a fee is reasonable even though the "time and effort devoted to the . . . claim may not have been extensive or difficult, [if] . . . services were in fact performed and . . . such services materially contributed to a most favorable result on the client's behalf." *Krueger*, 295 Minn. at 516-17, 202 N.W.2d at 876. We see no reason to conclude that a fee award calculated consistently with the statutory formula requires judicial review to ensure it is not excessive when the Legislature has already established a reasonable and fair balance between the interests of employer and employee

12

in achieving a speedy, efficient, and inexpensive resolution of a dispute. Absent exceptional circumstances, we presume a correctly calculated fee that does not exceed the statutory limit is reasonable.[3]

Bartel and SFM have not presented any exceptional circumstances here. Bartel and SFM's primary evidence that the fee is excessive is that it equates to an hourly rate of $1,000 as compared to the attorney's normal hourly billing rate of $300.[4] But the central feature of a contingent fee is the possibility of an award that exceeds the value of fees on an hourly basis. In other words, it "would make no economic sense for the attorney to accept a contingent case unless the effective hourly rate for work would exceed by some amount that which otherwise could be earned from noncontingent sources." Jay, *supra*, at 837. Thus, the mere fact that the contingent fee, when translated to an hourly rate, is higher than an attorney's billing rate in a noncontingent case, does not overcome the presumption that the statutory formula generates a fee that is not excessive.

---

[3] We note that an "exceptional circumstances" standard for review of alleged excessive fees is consistent with standards previously adopted by the Legislature, *see* Minn. Stat. § 176.081, subd. 4 (1984) (providing for review of fee award "upon the ground that it is arbitrary and unwarranted by the evidence"), *repealed*, Act of May 22, 1985, ch. 234, § 22, 1985 Minn. Laws 739, 755, and with the ethical standards that govern licensed lawyers, *see In re Dvorak*, 554 N.W.2d 399, 403 (Minn. 1996) (concluding that a fee that is in excess of that authorized by statute or court order is unreasonable); *In re Simmonds*, 415 N.W.2d 673, 675-76 (Minn. 1987) (detailing "exorbitance" in fees).

[4] Contrary to the dissent's assertion that we lack sufficient evidence to reach this conclusion, our review of the record uncovers no facts that would support a finding of exceptional circumstances, making a remand to the compensation judge unnecessary.

13

Therefore, because we exercise a strong presumption against finding that the statutory formula in Minn. Stat. § 176.081 results in an excessive attorney fee, and because Bartel and SFM have not presented any exceptional circumstances to challenge this presumption, we affirm.

Affirmed.

D I S S E N T

STRAS, Justice (dissenting).

In *Irwin v. Surdyk's Liquor*, we held that Minn. Stat. § 176.081, subd. 1(a) (2012), infringes on the judicial power by prohibiting judicial review of statutory awards of attorney fees to ensure that they provide adequate compensation for attorneys litigating claims for workers' compensation benefits. 599 N.W.2d 132, 141-42 (Minn. 1999); *see also* Minn. Const. art. III, § 1. This case presents the other side of the same question: whether the statute violates the separation of powers by prohibiting judicial review of excessive attorney-fee awards under the statute.

I continue to harbor doubts about our decision in *Irwin*, because the Legislature typically has the authority to regulate recoveries in civil actions, including the amount of attorney fees available, particularly when a case involves a statutory cause of action like a claim for workers' compensation benefits. *Cf. Irwin*, 599 N.W.2d at 144-46 (Anderson, Russell, J., dissenting). *Irwin*, nonetheless, is good law, and no one has asked us to modify it here. Our task is simply to clarify whether *Irwin*'s holding that we must retain "final, independent review" over an award of attorney fees that is too *low*, *id.* at 142, extends to instances in which an award is too *high*. As the court recognizes, the answer to that question is straightforward, because "the central point of *Irwin* . . . applies regardless of whether a statutory formula establishes a ceiling or a floor for a fee award." In my view, the foregoing analysis fully answers the question presented and I would proceed no further.

I.

Instead, as a matter of comity, the court declines to apply *Irwin*'s constitutional reasoning here.[1] When we have deferred to the Legislature as a matter of comity, even when a statute encroaches on the judicial power, as it does here, our decision to defer to the Legislature is itself an exercise of judicial power. *Cf. State v. Willis*, 332 N.W.2d 180, 184 (Minn. 1983) (deciding to enforce a statute as a matter of comity "since it neither interferes with nor impairs a judicial function"). However, unlike in those instances in which we have elected to enforce a statutory provision that would otherwise violate the separation of powers, there is good reason not to do so here.

The court justifies its decision by emphasizing that the formula for calculating attorney fees under the statute resembles a contingent-fee arrangement.[2] *See* Minn. Stat. § 176.081, subd. 1(a) (2012) (providing for a fee equal to 25 percent of the first $4,000 recovered plus 20 percent of the next $60,000). "[T]he Legislature reasonably adopted a formula for calculating fee awards that mimics the risk-spreading features of contingent-

---

[1] The court insists it is "reaffirm[ing] the holding in *Irwin*," and therefore attorneys representing injured employees should not worry. *See Irwin*, 599 N.W.2d at 142. But if a party responsible for paying an attorney (the employer and an insurer in this case, but perhaps an employee in a different case) wants to argue that the statutory fee is excessive, the court will refuse to entertain such a challenge absent exceptional circumstances. In short, the court decides to err on the side of overcompensating attorneys—an approach that is in tension with Minn. R. Prof. Conduct 1.5(a) ("A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses.").

[2] Of course, as illustrated by this case, the statutory scheme governing attorney fees in workers' compensation cases differs from a normal contingent-fee arrangement because it sometimes requires the employer or an insurer, rather than the employee, to pay the employee's attorney. *See* Minn. Stat. § 176.081, subd. 1(a)(1).

fee retainer agreements," the court explains, so it is natural that, "in a particular case, the Legislature's formula may result in a higher fee than the attorney might receive if paid by the hour or under a different formula." Thus, according to the court, there is no reason for the court to review the fee to ensure that it is not excessive.

The flaw in the court's argument, however, is that its rationale applies equally to the situation in *Irwin*. The possibility that "the Legislature's formula may result in a [lower] fee than the attorney might receive if paid by the hour or under a different formula" is just as much "an element of the risk-spreading inherent in contingency formulas" as is the possibility of the formula generating a higher fee in a particular case. Indeed, the fact that the attorney bears the risk of a low recovery, or even non-recovery, in an unsuccessful case is precisely what justifies charging the higher fee in a successful case. *Cf. Gisbrecht v. Barnhart*, 535 U.S. 789, 810 (2002) (Scalia, J., dissenting) (explaining that a contingent-fee arrangement "assign[s] the risk of an unsuccessful outcome to the attorney, in exchange for a percentage of the recovery from a successful outcome that will (because of the risk of loss the attorney has borne) be higher . . . than what the attorney would receive in hourly billing for the same case"). Accordingly, the fact that the Legislature has adopted a contingent-fee approach for setting attorney-fee awards in workers' compensation cases does not provide a basis for adopting a different approach here than in *Irwin*.

## II.

The court also asserts that adhering to *Irwin* in this case would undermine the legislative objectives embodied in Minn. Stat. § 176.081, subd. 1(a). What the court fails

to acknowledge, however, is that our decision in *Irwin* has already undermined the legislative scheme. The court does not assert, nor could it, that the text of Minn. Stat. § 176.081, or of any other provision of the Workers' Compensation Act for that matter, expresses a legislative preference for judicial review of only those attorney-fee awards that are allegedly too low, while leaving intact awards that are potentially too high. In fact, by reviewing only attorney-fee awards that may be too low, the court is likely doing more damage to the legislative scheme by creating an asymmetric preference in favor of higher attorney-fee awards in workers' compensation cases. Enforcing only part of the statute, in other words, has the potential to undermine the delicate "compromise struck in the workers' compensation statute balancing certain, but limited, benefits provided to employees injured in the course of their employment with the limitations on the ability of workers to recover damages in tort actions." *Stringer v. Minn. Vikings Football Club, LLC*, 705 N.W.2d 746, 755-56 (Minn. 2005).

Moreover, the various legislative policies that the court claims would be undermined by judicial review of attorney-fee awards were announced in cases under prior versions of the Workers' Compensation Act that expressly permitted judicial review of attorney-fee awards. *See, e.g.*, *Mack v. City of Minneapolis*, 333 N.W.2d 744, 752 (Minn. 1983) (noting that, under the Workers' Compensation Act, "ultimately we can review all attorney fees decisions"); *see also* Minn. Stat. § 176.081, subds. 3-4 (1982) (providing that an employee could seek review of an award of attorney fees in the workers' compensation court of appeals and in this court); Minn. Stat. § 176.081, subd. 4 (1980) (providing that an employee could seek review of an award of attorney fees in this

court); Minn. Stat. § 8201 (1913) ("No claim for legal services or disbursements pertaining to any demand made or suit brought under the provisions of this act shall be [valid] . . . unless the same be approved in writing by the judge presiding at the trial . . . ."). Indeed, some of the decisions applied versions of the statute that required courts to review fee awards under a list of factors that were almost identical to the factors that we adopted in *Irwin*. *Compare* Minn. Stat. § 176.081, subd. 5(d) (1982), *and* Minn. Stat. § 176.081, subd. 5(d) (1980), *with Irwin*, 599 N.W.2d at 142. The court does not explain how the possibility of judicial review in this case would undermine legislative policies that our previous decisions have said were *furthered* by a similar type of judicial review for reasonableness. *E.g.*, *Kahn v. Univ. of Minn.*, 327 N.W.2d 21, 24 (Minn. 1982) (noting that the "statutory scheme for application and review of attorney fee requests [by the agency] evinces two distinct purposes": to protect claimants from excessive charges and to insure that the attorneys representing them receive reasonable compensation).

Finally, the court fails to directly address the argument made by the employer and the insurer (collectively, "the relators"). According to the court, the relators urge us to review attorney-fee awards by "[c]onducting a case-by-case determination of attorney fees." However, the relators actually request a "determination of an attorney fee pursuant to the *Irwin* factors," through consideration of, among other things, "the amount involved, the time and expense necessary to prepare for trial, the responsibility assumed by counsel, the experience of counsel, the difficulties of the issues, the nature of the proof involved, and the results obtained." *Irwin*, 599 N.W.2d at 142. The court fails to explain

how the sort of review the relators actually seek, based on the factors that we already endorsed in *Irwin*, undermines the statute.

III.

The court also purports to create an exception for truly excessive awards in "exceptional circumstances," but then deprives the relators of the benefit of that exception based on another misreading of their argument. This time, the court conclusively determines that the relators "have not presented any exceptional circumstances" because they did not present evidence that the fee in this case was excessive. The problem is that the relators had no reason to present evidence of the excessiveness of the fee to this court, and no way of knowing that they were supposed to do so, because they did not ask *this* court to hold that the particular fee in this case was excessive. Rather, what the relators requested was that the "matter be reversed and remanded to the Compensation Judge" for review of the statutory-fee award. That is what we did in *Irwin*, 599 N.W.2d at 142 (remanding to the workers' compensation court of appeals, not to a compensation judge, because the compensation judges had already made findings regarding the reasonableness of the fees), and the relators would have had no reason to know that, in this case, the court would create a new barrier to judicial review of a statutory-fee award. Because they expected to have a chance to prove excessiveness before the compensation judge in the first instance, in accordance with *Irwin*, they could not have known that they needed to prove the excessiveness of the fee to this court.

In short, the court penalizes the relators for failing to meet a standard that had not yet been announced because they failed to present evidence that they would have had no reason to present to this court. Even if I agreed that this case is distinguishable from *Irwin*, the court's decision simply goes too far.

IV.

For the foregoing reasons, I respectfully dissent.